Good morning. How are you? Good morning, Your Honors. May it please the Court, my name is Eduardo Martorell. I'm with the Law Firm of Borden Martorell, LLP. And I represent the plaintiffs and appellants in this matter, D.J. St. Jon and the putative class. That's everyone that's similarly situated. And, Your Honors, I'm glad to be here because I feel like I've been stuck in the fable of the Emperor's New Clothes. We know what the law is, but for some reason we're pretending we don't or that it doesn't apply. It applies squarely. 3.769 of the California Rules of Court, and I'm going to quote from Mark v. Spencer, a case on page 20 of my brief, says, Rule 3.769 was designed to protect class members from potential conflicts of interest with their attorneys by requiring the full disclosure of all fee agreements in any application for dismissal or settlement of a class action. Okay, let's take that as a given. I guess what I'm troubled with in this case, if I understand the facts correctly, any excess fees in this case would not have gone back into the damages award, and your client would never have received a penny of whatever reduction took place. Under the circumstances, how does she have any standing to even raise this issue? Well, the Lobatz case, the Ninth Circuit's case.  Which case? Lobatz. It's cited in our reply brief. It specifically says that attorneys can, it can work out like this. If someone's willing to, in this case, pay $30 million to settle the dispute, right? There was the verdict for $23 million, and they said, we're willing to pay this additional $7 million to make this go away. What's to stop the attorneys from saying, you know what, the class is unhappy, they want to appeal. Instead of the $7 million you were going to give us, if you give them $2 million and you give us $5 million, right, then the class will get a little bit more. Yeah, but that's not the facts of this case, if I understand it correctly, counsel. In this case, the class, including your client, settled for a certain amount of money. They got it. It was over, in effect, except for the attorney fees. And then the attorneys met with, I guess, the city in this case, and worked out what the attorney fees were going to be. That's what's involved in that case. No greater than. Yeah, no greater than. And there was never any possibility of any more money going to your client's pocket or the class. Have you got anything in writing that would show to the contrary? Well, with all due respect, Your Honor, that's not the facts of this case. Tell us what the facts are, then. Sure. The facts are that there was a verdict, and then the class, a lot of the class members wanted to appeal. And there was a mediator involved post-verdict that met with the parties. The parties negotiated the settlement. They said, you don't appeal, we won't appeal, and we'll take exactly $7,716,510. So, again, they could have negotiated for some of that to go to the class. They could have appealed. It's basically they were ceasing with litigation. Right? An appeal is sometimes half the battle, especially in a case like this that was so complicated that was litigated for 11 years. An appeal might still be ongoing. Okay, but with respect, counsel, I don't see where you're helping us here. The reality is the class members portion of the case, whether a mediator was involved or whatever, it was settled, right? It got settled, except for the attorney fees. It wasn't settled. It was a verdict. Okay, a verdict. Yes. But they agreed that that was the amount that they were going to get. The class, the judge said it. The class never agreed on it. Okay. And the class was never given it. Judgment was entered. The judgment was entered. And then subsequent to that, there was this stipulation, which is a settlement. When you agree to say, hey, we'll put down our guns, you put down your guns, that's a settlement. So it's a post-judgment settlement. Okay, but bottom line is it was a settlement. Your client was going to get her portion of whatever was in that settlement, right? That's correct. So all that's left over, which was carved out from the settlement, was what are the attorneys going to get. It was between the payor and the payees. That's what these gentlemen are here for. Your client, who was part of the class, whose issue was settled and was going to get the money that she was entitled to under that settlement, my question to you, again, is what standing does she have to bring a claim at this point where under no circumstances will she get a dime more even if these folks get less? Well, if she had not had her appellate rights traded away, they could have appealed. But they were traded away. Exactly. They were settled, right? So she should have the right under 3.769 whenever there's any agreement for attorney's fees. Any. Right. Your hook is, well, okay, fine, maybe she doesn't get a penny more, but she could have appealed and then maybe the judgment would be reversed in some fashion. And so that's another opportunity to go back at it and have another bite of the apple, right? That's exactly right. So now you're complaining that she didn't get sufficient notice because the wrong provision was used, that this is the state provision. But who ordered compliance with that particular provision? It was the state court. Right. So what did these folks do? Did they violate the court order? Did they just follow the state court directive in terms of what to do? And it seemed to me from looking at the record, the court told them what to do to provide notice, and they followed that, right? That's where I respectfully again disagree. The court didn't consider it at all. The court took a judgment that it had already drafted, and it had spaces for the attorney's fees and the costs. And normally there would be a motion for attorney's fees, which the defendants all considered. They actually filed an extension for more time to file it. And then instead of actually litigating that out, they settled. They agreed to a very specific amount in exchange for the appellate right. But didn't they comply with the notice provisions as the court imposed them? So those notice provisions were in the original judgment. They didn't change. There's no evidence that the judge considered, oh, yeah, that that original notice component, which applies in cases that go through a judgment, was reconsidered after the settlement. So the judge never said, oh, look, this is a settlement. I need to reconsider notice. They deceptively just said, okay, great, we have this stipulation, which is a settlement, and they know they should have followed 3.679, and that is what we're complaining about in this case. You know, counsel, with respect, aside from the standing issue, which obviously is very important to us, under Ricker-Feldman, what are we even involved in this for? Why are we here before a federal court? This is a state court action involving state law. You're complaining about the actions of a state court and a settlement in a state court. Why is a federal court involved at all? Well, it's all, Your Honor, it all has to do with standing, right? And the cases we've cited are clear. You're going backwards now. My question is, standing is one issue. Right. My question to you is, even if you had standing, what right do we have as a federal appellate court to, in effect, attack a state court judgment based on state law? Aren't we barred by Ricker-Feldman for doing that? I don't believe so, Your Honor. There's the deprivation of due process here, which makes it – Is that your argument? That's part of my argument, if I can go through it, Your Honor. But it's related. Like, who deprived? Even if you had some due process rights were violated, who deprived that? Wasn't it the state court? So now we're essentially saying, Judge, on the state court, you didn't make these people comply with the correct notice provisions, and so, therefore, you deprived the class member of her due process rights. Now we're telling the state court what to do. Well, it was the defendants who have 10 attorneys who all market that they are experiencing class action litigation. So they were well aware of 3.679, Rule 3.679, and its requirements that they have a freedom of marriage. But whatever violation that you think that they committed, that's to be resolved in the state court, I would think. Well, there's three reasons why Ricker-Feldman does not apply. Number one, this was never adjudged. It was not part of the judgment. It was roped in and signed as if it were, but there was no consideration of a single billable hour, a single declaration, a motion, nothing. There was no judgment on that. You're attacking a state court judgment. There was a judgment. You're attacking how it came to be. You're attacking an alleged violation of state court rules. You're entitled to litigate your case. What you're not entitled to do is to have a federal appellate court tell a state court what to do based on state law unless there are federal constitutional or state or federal statutory or regulatory issues that in effect preempt the state. I don't understand why this case is before us. I honestly don't. I don't think your client has standing. I ask you about that. You have not given me an answer to that, and I don't know how we can help you as a separate matter because of Ricker-Feldman. Why am I wrong? Your Honor, if I could address the standing and then the Ricker-Feldman. Please do. We've cited the cases that basically say that the right to object is a constitutional due process right. Under state law? In other words, you're saying that if you have a right to object to a class action settlement under state law, that you have federal due process constitutional rights that basically are not barred by Ricker-Feldman. In other words, based on your analysis, it sounds like a federal court could come in and redo almost any state judgment regardless of its nature, regardless of the rules on which it is based. That can't be. I agree that it can't be, Your Honor. If there's a deprivation of due process in reaching that judgment, if a state court just says I'm not going to do our job and I'm just going to somehow just dismiss it. You think that then you can go into federal court? What's the end of that sentence? Without giving notice to someone, without that person knowing. Yes. If all that happens, then what? That is where Ricker-Feldman falls apart, and that's where it is a 60-day requirement to file an appeal. If a class counsel can deceive the class for 60 days, then they lose their right to appeal. We would love to be in the California Court of Appeals, but for 60 days the class was with their hands in the air literally calling their counsel saying, so what's going on? Oh, no, no, don't worry about it. We're not going to appeal. Why not? There wasn't this clear situation, which is what the court has to do under 3.679 is step in as a fiduciary for these people and say, wait, is what's happening fair? That's why they're called fairness proceedings. So why wouldn't you attack that in state court? Because they deceived the class for 60 days. You could say that in state court. I mean, I just — there's a disconnect, honestly. So tell me there are cases that say that even if there's fraud on the court, that you can't bring that case to the court? I would be surprised. It's not so much fraud on the court. Well, that's what you were suggesting. There's a strict 60-day deadline to file an appeal. And basically the notice was not adequate here, and that was a deprivation of due process. And due process is something protected by the Fifth and Fourteenth Amendments of the United States Constitution. If you're right, any state court judgment of any nature can be attacked in federal court, and you're not right. I hope I'm being clear. I'll reserve the rest of my time for rebuttal. Okay, here we go. Four lawyers and 15 minutes. This is going to be interesting. May it please the Court. I am Edward Walton of Procopio. I represent what have been referred to as the city of San Diego defendants in this case. We have divided up our time. I'm going to address, and I hope in very short order, the question of the waiver of a challenge to the injury and fact-finding that the court made below Judge Curiel. My colleagues will address the issue of standing, in case you don't buy into the waiver argument, and Rooker-Feldman, which has already been discussed with plaintiff's counsel. And I want to just cut to the chase, because given the comments of the court, really the only point I think I want to make at this point is that the plaintiff, in opening, failed to address at all the question of standing. That was an issue that just essentially wasn't addressed. Our view is that that failure to address that issue was an intentional choice made, if you take a look at footnote four on page 25 of the opening brief, made for the purpose of saying, look, I don't have to prove injury and fact. If there is a lack of a fairness hearing, which we've heard a lot about here this morning, that's sufficient. Let me ask you this, counsel. Yeah. If your opponent's client would not get a penny more money, even if the amount of attorney fees were reduced, is there any way she can have standing under federal law? I do not believe so. Okay. I just don't see standing here at all. And I think that the plaintiff's counsel didn't see it either, so there was a conscious choice made to avoid the argument of standing, injury and fact, the injury and fact component of the three components of standing, and instead consciously substitute the argument of loss of a fairness hearing or loss of due process rights as a substitute for the argument as to what standing ought to be based upon. Whatever other arguments are made, we don't have any ability to decide a case where there's no standing, right? Yes, and that's why we're here is to ask you to confirm the court's order of dismissal on either one of two grounds, one being the failure or lack of standing or the Rooker-Feldman Doctrine. My argument is simply that because the plaintiff waived the argument of attacking the standing element, the lack of standing element, then you can confirm on that basis alone. My colleagues will urge that you confirm on the basis of standing, because that was argued in the reply brief in kind of an ambush fashion, and I think the law is pretty clear, including the Sakia case, that you can't do that. And so you could confirm or affirm on either ground. Thank you very much. Thank you. Good morning, and may it please the Court. My name is Colin Walshok. I represent Timothy Tatro and Peter Zamoyski in this matter, and my purpose is to address standing issues. I think the Court has addressed those fairly sufficiently in its questioning, but I do want to point out. Your clients are lawyers who got fees. Is that right? Correct, Your Honor. They were the class counsel in the underlying case. There were a bunch of class counsel. Is that right? Because there's some other people that got fees that are being represented. Correct. Okay. From your perspective, are there any federal law issues involved in this lawsuit? Any federal law issues? No, Your Honor. They're all state law. These are all state law issues. There's a state settlement, a judgment, and there's a dispute under state law of whether the rules were complied with, right? Correct, Your Honor. There's no standing. There's no jurisdiction. Rooker-Feldman applies. We don't even get to due process issues. So let's take the plaintiff's argument, best case for plaintiff, that you didn't give them notice or sufficient notice or something. What was their remedy then? Their remedy, Your Honor, was I think what you were hinting at in your questioning was if there was some sort of lack of notice, that had to be addressed to the state law court, and it could have been addressed either to the judge presiding over the trial court or it could have been raised to the court of appeal in the state court. It was this absolutely ironclad 60 days or 90 days or whatever it is that you had to appeal so that they'd say, well, we've been out of luck there. Your Honor, I think if there's some sort of fraud in the inducement or some sort of fraud at play, there's got to be ways around those timing requirements. Indeed. And what are those ways? Well, I'm assuming there's an appeal that could be filed to the state court. But you can't cite me some California law that says that. I can't, Your Honor. It wasn't something raised in any of the briefs at all. Well, what was raised clearly in the briefs is their contentions, the contentions that they made this morning. So you knew what they were saying. They were saying that the dirt had been done to them and that these rules were foreclosing them from getting an appellate court to look at it. So it seemed to me the way to get back to that would be to say, oh, no, you had a way to get a remedy under state law. You've told us a remedy has to be under state law, but you won't tell us how they would do that. That's what I'm asking. Let me point out a very important fact that's in the briefs. The appellants are not contesting the underlying judgment. They say in their reply brief on page 12, they're not complaining of injuries relating to the judgments. In their opposition to the motion to dismiss, which is in the excerpts of record on page 44, they say the goal in the present litigation is not to overturn the state court judgment. But to? But to challenge the fairness with the attorney's case. So that's the only thing before the state court. I understand that. But you would agree with me that that's a big-ticket item, shall we say. It's absolutely a big-ticket item. Okay. So where was their remedy to do that? Well, Your Honor, my goal is to address the standing issues on this. Okay. So one of your colleagues is going to talk to me about that? I think one of my colleagues will address it on the roof of the element issues. They might not be happy if you're passing the ball, but okay. Well, I apologize, Your Honor. But in terms of standing, there's clearly no standing whatsoever. In terms of the fairness hearing issue, Ms. St. John had no vested right in these attorney's fees. It's important to note that there was a judgment that was entered. There were statutory attorney's fees that were awarded. Statutory attorney's fees belong to the attorney, not to the class members. I think we get the point about federal standing. More to Judge Motz's point, under California state law, where your opponent is simply challenging the attorney fees, fairness of the attorney fees, is there any statute within the state class action barrage of statutes and regulations that would allow someone to seek a hearing or motion for reconsideration or something where you don't have a federal standing issue involved, in other words, in state court? Well, Your Honor, again, I'm assuming that there would be a right. I can't cite the court to a specific statute, but a right to an appeal to the court of appeal. I'm going to pass to allow the next counsel who's more attuned with that. Good job. You all are better than I thought you were going to be. You eluded a little time, but then okay. Apparently the baton has been passed to me. I can't. My name is Eric Deitz. I'm from Gordon, Reese, Scully, Mansacani. I'm here on behalf of Gordon and Reese, Miles Scully, William Rathbone, and Timothy Branson, counsel for the city of San Diego and the underlying action. And my intent is to address the Rooker-Feldman doctrine. I think the court has correctly hit upon the fact that this is a textbook application of the Rooker-Feldman doctrine. Do you have anything to offer us about what their remedy could have been in state court? Well, Your Honor, in that regard, there would be an opportunity for this individual who has brought the underlying district court action to intervene in the superior court case and to move to vacate the amended judgment or the stipulation as to the fees. California procedural law allows that. But there was dilatory conduct on the part of Ms. St. John in acting upon this. Well, she maintains this is really just to give at least me a little comfort in saying, okay, there's no standing with Rooker-Feldman doctrine. They don't get any relief from us. And so in my mind, I want to think, well, but maybe they could have gotten relief someplace else. That's what I'm probing here. And I thought that my takeaway from the appellant's argument was that his client had not been appraised of what was going on. So how could they have intervened? Well, there was notice given. And there was. And the notice was that there's going to be, what, $7 million in attorney's fees? There was a notice given as to the fees, as to the amount of the settlement, as to the judgment. All of that was the subject of notice. And the issue is which notice procedure was employed, which in this case the court elected, the superior court elected to direct that notice be given under CRC 3.771. It's appellant's contention. It should have been rule of court 3.769. But, again, that dovetails. The difference being one you get the fairness hearing and the other one you don't? There are different procedural requirements, and there is a more formalized process with 3.769. After the notice went out, was there any objection raised to the superior court that the notice was sent out pursuant to the wrong provision? No, Your Honor. There was not. Was there any objection about the amount of, I guess the attorney fees hadn't been settled at that point, right? There was just a structure set up. Well, there was an ex parte hearing at which time the counsel for all parties were present. And it was put on the record what the terms of the stipulated attorney fees would be. But, again, as the court observed previously, it's not a question of some entitlement by this appellant. No, I understand that point. But maybe it's easier for you to answer if you hypothesize a different case, not your case, where there is much nefarious activity going on. What I'm trying to do is to find out what could have been done in state court. Well, Your Honor, again, I think the procedures that I've described in terms of intervening, moving to vacate, set aside the judgment, those are the procedures that are available under California state law. And in this circumstance, again, they don't apply because there was no entitlement to the stipulated amount of the attorney fees. I'm not in a position to argue hypotheticals because we're here to address the facts in the underlying case that give rise to the district court action in that regard. So, undoubtedly, there may be a hypothetical scenario, not this particular set of circumstances, that could, in theory, give rise to an entitlement to fees because it reduces the amount of the class award or class settlement. But that's a different issue than the one that is before this court or was before Judge Curiel. I have two quick questions. Do I understand you to say that the plaintiff and others in the class were notified under some section, whether it was the right one or not, but they were notified of the amount of the settlement, the rough amount of the attorney fees, and the whole procedure? They did not object, right? Correct. Okay. I guess the next question I would ask is, is there any way that she could perform the role of an objector with respect only to the attorney fee portion of the case? In other words, could she have moved the superior court for permission to be an objector as to the attorney fee portion of the case? As to the attorney fees that were stipulated as to the amended judgment? That right was hers to exercise. She didn't. To intervene in the case, to seek standing to do so, and then to move to vacate the amended judgment or the stipulated fee award and to the extent the relief was not granted, then she would have a ripe issue for appeal to the Fourth District Court of Appeal. And that would not have been proscribed by the settlement, which barred an appeal of the other portion of the action. Is that right? No, because she would have sought standing separate and apart. So she had to process through the state statutes. She didn't follow them, but she had those rights to challenge it, and she just didn't do what the state law required. Right. Thank you. I feel like I'm on a Lawrence Galk show with one act sitting down and the next act beginning. Well, you're all doing such a wonderful job. Doug Butts, Higgs Fletch, Romney. Wonderful, wonderful. I'm dating myself, too, so. I want to respond directly to some of Judge Mott's concerns about what protections was she given. A couple points I think are important to mention. Judge Pressman retained jurisdiction over this settlement. The amended judgment, amended final judgment, as the prior judgments all provided that he retained jurisdiction to enforce, modify, exercise his discretion over the implementation and enforcement of the judgment. So Ms. St. John could have accessed Judge Pressman and the state court procedures to advance her cause in the event that she felt there was some irregularity about it. Importantly, at the TRO hearing conducted by Judge Curiel, Judge Curiel asked Mr. Martirell, do you have any evidence that Judge Pressman was a part of this alleged conspiracy? And he responded, I have no evidence to support that. So there was a built-in mechanism in the state court which was equipped to deal with any concerns she had, and she did not access that. Was she given notice that the attorney's fees would be up to $7 million? Yes, she was. Was that in the notice? Yes, that notice was given on November 14th. Okay, well, he's saying a notice, but I thought, well, maybe the notice was adequate, attorney's fees will be awarded separate and apart, but she was told the exact amount. Absolutely was. Okay. And this is a terribly important point. The function and role of the class representatives have not really been underscored in the briefing, and if you read the stipulation and award for attorney's fees, it says the attorney's fees were approved by the class representatives, not just by the class counsel, but by the class representatives. So if Ms. St. John had a beef with what occurred, not only did she have immediate access to state court procedures through the trial judge, who was well-equipped to deal with these issues, but she had access to redress before class representatives as well. You're out of time. Let me ask my colleagues. Do either of my colleagues have additional questions? You all did amazingly well, and your time is a little bit over, but thank you. You have some rebuttal time, counsel. Thank you, Your Honors. Judge Motz. Did the class representatives sign off? Yes, they did. And you could have sued the class representative then, right? I'm not sure about that, Your Honor. Well, you say that this is a bad agreement that your client wasn't given notice to or didn't. I would think if the representative, you know, did something improper, you have cause of action against them. Two of the class representatives died during the litigation. We're talking about elderly people in a mobile home park who were – they had attorneys putting all the pressure on them saying, we're going to lose the entire thing unless you settle. This is about attorneys who had a $7.7 million incentive to get this settled right away. So who is going to object to this, right? They're the attorneys. It would seem to me that settling it right away might have benefited people, poor people that were old. We have a shorter attention span, you know, a shorter lifespan looking at it. So I don't know if that helps you. Your Honor, it took – after 11 years of litigation, all the attorneys and the city wanted this over with. And maybe the plaintiffs. And maybe even the court. Okay, sure. But a lot of the class members did not, and they were not given the right to object. And the difference between 3.771, which is – Wait, wait, wait, wait, wait. I thought everybody agreed that they were given the chance to object. They just didn't object. And not given the correct chance to object. No, that's exactly it. But they were given a correct chance. They did not have the right to object. They did not give proper notice and say, hey, you have – in a class action. You don't agree with the section it was given under, but couldn't you have gone in and said, hey, you gave notice on the wrong section. We're entitled. Why not? That's exactly it. 3.771 gives no right to object. But if you said it was the wrong section and it should have been under a different section, you could have gone in on that. I don't think an attorney is good enough to catch right away and say, hey, I'm going to appeal within 60 days. A class who's basically not represented at this point because of the conflict where their own attorneys are saying, let's settle this, right, they don't notice this, and the notice was extremely deceptive. It looks the same. I encourage you to take a look at them. We will, by the way. It's frequently asked questions. Your time is up. I'm both sides. If I could just talk about – That's it. Done. Thank you. We appreciate the argument just made. The case just argued is submitted. Thank you, gentlemen, all, for your argument.
judges: Motz, M. Smith, Nguyen